Law Offices of
**TONON & ASSOCIATES**
Post Office Box 2536
Truckee, California 96160
    Tel. (530) 587-0333
    Fax. (530) 587-1545
Gayle K. Tonon, Esq. (SBN 110427)

Attorneys for Defendants:  Arthur
Munoz and Town of Truckee

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOSEPH BOCHNER,

              Plaintiff,

vs.

ARTHUR MUNOZ; TOWN OF TRUCKEE,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:11-CV-03416-LKK-CKD

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

Date:  March 13, 2013
Time:  10:00 a.m.
Courtroom:  24, Judge Carolyn K.
              Delaney

COMPLAINT FILED:  12/22/2011
TRIAL DATE:  04/29/2014

///

///

///

**TABLE OF CONTENTS**

Page

Table of Authorities     .   .   .   .   .   .   .   .   .    ii

Memorandum of Points and Authorities

    I     Facts      .   .   .   .   .   .   .   .   .    1

    II     Summary Judgment is Proper Where There is
          No genuine Dispute about a Material Fact    3

    III     The Constitutional Rights of the Plaintiff
          Were Not violated     .   .   .   .   .   .    5

    IV     Plaintiff's Refusal to Participate in the
          Field Sobriety Test Exhibited Consciousness
          Of Guilt and Established Probable Cause    7

    V     There was No Unlawful Search and Seizure    9

    VI     Defendant, Arthur Munoz, has the Right to
          Qualified Immunity as He acted Reasonably    10

    VII     There are no Facts Upon Which to Support
          The Claim for Punitive Damages     .   .    12

    VIII     There is no Evidence regarding "Failure to
          Train"     .   .   .   .   .   .   .   .   .    14

    IX     Defendant, Town of Truckee, is Not Liable
          Pursuant to Monell     .   .   .   .   .   .    15

    X     Conclusion      .   .   .   .   .   .   .   .    17

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>Anderson v. Creighton</u> (1983) 483 U.S. 635, 644,
     107 S.Ct. 3034, 3041     .   .   .   .   .   .   .    12,13

<u>Anderson v. Liberty Lobby, Inc.</u> (1986) 477 U.S. 242,
     247, 106 S.Ct. 2505, 2510      .   .   .   .    3,4

Bivens v. Six Unknown Named Agents of Federal Bureau
Of Narcotics (1972) 456 F.2d 1339, 1348 . . .     12

Browning v. Vernon (9th Cir. 1995) 44 F.3d 818, 822     10

City of Canton v. Harris (1989) 489 U.S. 378, 386     14,15

City of Newport Beach v. Fact Concerts, Inc. (1981)
453 U.S. 247     . . . . . . . . .     12

City of St. Louis v. Praprotnik (1988) 485 U.S. 112,
127, 108 S.Ct. 915     . . . . . . . .     15

Crowe v. County of San Diego (C.D.Cal.2005)
359 F.Supp.2d 994, 1013-14     . . . . .     11

Elder v. Holloway (1994) 520 U.S. 510, 515     . . .     10

Harlow v. Fitzgerald (1982)   457 U.S. 800, 818   . .     10

Hunter v. Bryant (1991) 502 U.S. 224, 229     . . .     10

Jeffers v. Gomez (9th Cir. 2001) 267 F.3d 895, 910   .     10

Marvin v. Department of Motor Vehicles,
161 Cal.App.3d 717, 719, 207 Cal.Rptr. 793     .     8

Monell v. Department of Social Services of the City
of New York, 436 U.S. 658, 98 S.Ct. 2018 (1978)     15,16

Pauls v. Green, 816 F.Supp.2d 961, 969     . . . .     17

Pearson v. Callahan (2009)   555 U.S. 223, 237,
129 S.Ct. 808, 818     . . . . . . . .     4,5,6,12

People v. McKay (2002) 27 Cal.4th 601, 607,
41 P.3d 59, 117 Cal.Rptr.2d 236     . . . .     7

Saucier v. Katz (2001) 533 U.S. 194, 200, 121 S.Ct.
2151, 2155-2156     . . . . . . . .     4,5,11

Schmerber v. State of California
384 U.S. 757, 86 S.Ct. 1826 (1966)     . . . .     9

Smith v. Wade (1983) 461 U.S. 30     . . . . . .     12

Wereb v. Maui County, 830 F.Supp.2d 1026, 1031 (2011)     16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Whren v. United States (1996) 517 U.S. 806,
    116 S.Ct. 1769, 1771     .   .   .   .   .   .   .   .        6

**Statutes**

CACI No. 3941     .   .   .   .   .   .   .   .   .   .   .   .        13

California Vehicle Code, Section 23612(a)(1)(A) .   .        7

Federal Rules of Civil Procedure, Rule 56(b)     .   .        3

Federal Rules of Civil Procedure, Rule 56(c)     .   .        3

Vehicle Code, Section 21650     .   .   .   .   .   .   .   .        2

Vehicle Code, Section 23152     .   .   .   .   .   .   .   .        2

(TRX1201)P012113.MemoPNATableContents

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Law Office of
**TONON & ASSOCIATES**
Post Office Box 2536
Truckee, California 96160
Tel. (530) 587-0333
Fax. (530) 587-1545
Gayle K. Tonon, Esq. (SBN 110427)

Attorneys for Defendants: Arthur
Munoz and Town of Truckee

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH BOCHNER,<br><br>               Plaintiff,<br><br>vs.<br><br>ARTHUR MUNOZ; TOWN OF TRUCKEE,<br><br>               Defendants. | Case No. 2:11-CV-03416-LKK-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 13, 2013<br>Time: 10:00 a.m.<br>Courtroom: 24, Judge Carolyn K. Delaney<br><br>COMPLAINT FILED: 12/22/2011<br>TRIAL DATE: 04/29/2014 |

**I**
**FACTS**

The case concerns an incident that occurred on December 22, 2009. Plaintiff, JOSEPH BOCHNER, in pro per, was driving a white 1985 Subaru hatchback with Oregon License Plate #715BDA eastbound on Donner Pass Road. (UMF #1) Defendant, ARTHUR MUNOZ, was a Police Officer with the Town of Truckee at the time and witnessed the Plaintiff illegally pass an almost stopped semi-truck on the right

1 hand shoulder of Donner Pass road at an unsafe speed. (UMF #2) A
2 violation of Vehicle Code, §21650.[1]

3    Defendant, ARTHUR MUNOZ, activated the external PA system and
4 told Plaintiff, JOSEPH BOCHNER, to pull over. (UMF #3) Thereafter,
5 Defendant, ARTHUR MUNOZ, proceeded with conducting a traffic warrant
6 investigation during the course of which he determined that there was
7 a question as to whether or not the Plaintiff, JOSEPH BOCHNER, had
8 been drinking. (UMF #4) Defendant, ARTHUR MUNOZ, requested the
9 Plaintiff to participate in a field sobriety test, which Plaintiff
10 refused to do requesting that he be allowed to give blood for
11 testing. (UMF #5) After explaining to the Plaintiff, JOSEPH
12 BOCHNER, that he would have to be arrested in order to submit to a
13 blood test, Plaintiff continued to refuse to participate in the field
14 sobriety test and was taken into custody. (UMF #6) All of the
15 interaction between the Plaintiff, JOSEPH BOCHNER, and the Defendant,
16 ARTHUR MUNOZ, at the scene was captured on the in car video. (UMF #7)

17    Plaintiff, JOSEPH BOCHNER, was placed under arrest for suspicion
18 of driving under the influence of alcohol. (UMF #8) A violation of
19 Vehicle Code, Section 23152(a). [2] He was then transported to the Tahoe
20 Forest Hospital where a blood draw was performed. (UMF #9)

21    Plaintiff, JOSEPH BOCHNER, in pro per, also brings suit against
22 the Defendant, TOWN OF TRUCKEE, under the Monell doctrine and for
23 failure to train. As set forth in the Declaration of Chief Adam
24 McGill, there was and is no policy, practice or custom of the
25 Defendant, TOWN OF TRUCKEE, designed to violate the Constitutional

26

27 [1] Pursuant to Local Court Rule 5-133(i), attached hereto is a copy of Vehicle Code, Section 21650
28 [2] Pursuant to Local Court Rule 5-133(i), attached hereto is a copy of Vehicle Code, Section 23152

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

rights of the Plaintiff, JOSEPH BOCHNER, as alleged in the Complaint. (UMF #10) Further, Defendant, ARTHUR MUNOZ, is more than adequately trained regarding investigation and arrests for driving under the influence. (UMF #11)

## II
## SUMMARY JUDGMENT IS PROPER WHERE THERE IS
## NO GENUINE DISPUTE ABOUT A MATERIAL FACT

"A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Federal Rules of Civil Procedure, Rule 56(b)

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure, Rule 56(c). (In pertinent part.)

"Mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc. (1986) 477 U.S. 242, 247, 106 S.Ct. 2505, 2510.

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for the jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Fed. Rules

Civ. Proc. Rule 56(c), 28 U.S.C.A." <u>Anderson v. Liberty Lobby, Inc.,</u> <u>Id.</u>, 249, 2511.

"A qualified immunity defense must be considered in proper sequence. A ruling should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive. Such an immunity is an entitlement not to stand trial, not a defense from liability." <u>Saucier v. Katz</u> (2001) 533 U.S. 194, 200, 121 S.Ct. 2151, 2155-2156.

"Qualified immunity is immunity from suit rather than mere defense to liability." <u>Pearson v. Callahan</u> (2009) 555 U.S. 223, 237, 129 S.Ct. 808, 818.

Defendants submit that there is no genuine issue of fact. Plaintiff, JOSEPH BOCHNER, in pro per, bases his Complaint on the alleged violation of his Fourth and Fourteenth Amendment rights to be free from unreasonable seizure of his person; i.e. false arrest. However, as set forth above Defendant, ARTHUR MUNOZ, had probable cause to make the vehicular stop pursuant to the Vehicle Code of the State of California. (UMF #2) Thereafter, Officer Munoz detected the odor of alcohol and that the Plaintiff had red and watery eyes. (UMF #4) He requested that the Plaintiff, JOSEPH BOCHNER, participate in a field sobriety test, which Plaintiff refused. (UMF #5) Plaintiff's refusal to participate in a field sobriety test constitutes consciousness of guilt and automatic probable cause for the arrest for suspicion of driving under the influence.

Defendant, ARTHUR MUNOZ, was acting in his capacity as a peace officer. (UMF #2) His actions were reasonable and necessary and as such he has immunity for the acts performed that give rise to the within action.

1　　　There also was no policy, custom or procedure as alleged in the
2　Complaint that was in effect on December 22, 2009, regarding the
3　number of arrests for "suspicion" of driving under the influence in
4　effect in the Town of Truckee or instituted by the Truckee Police
5　Department. (UMF #10) No policy was in effect that was designed to
6　violate the Constitutional rights of the Plaintiff, JOSEPH BOCHNER,
7　in pro per.

8　　　Defendant, ARTHUR MUNOZ, was trained with regard to spotting
9　suspicious behavior regarding the use of alcohol and conducting field
10　sobriety tests. (UMF #11) There is no evidence of any deliberate
11　indifference on his part.　Rather he arrested the Plaintiff, JOSEPH
12　BOCHNER, as he had probable cause to do once Plaintiff refused to
13　participate in the field sobriety test.

14

**III**
15
**THE CONSTITUTIONAL RIGHTS OF THE**
**PLAINTIFF WERE NOT VIOLATED**
16

17　　　"The initial inquiry is whether a constitutional right would
18　have been violated on the facts alleged, for if no right would have
19　been violated, there is no need for further inquiry into immunity."
20　Saucier v. Katz (2001) 533 U.S. 194, 201, 121 S.Ct. 2151, 2156.

21　　　The most recent case of Pearson v. Callahan, Supra. 236, 818
22　held that the Saucier procedure should not be regarded as mandatory.

23　　　"In some cases, a discussion of why the relevant facts do not
24　violate clearly established law may make it apparent that in fact the
25　relevant facts do not make out a constitutional violation at all."
26　Pearson v. Callahan, Id. 237, 818.

27　　　It is the position of the Defendants that Officer Arthur Munoz
28　acted reasonably and did not violate the Plaintiff's constitutional

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1 rights. In the _Pearson_ action officers entered the residence of an
2 individual without a warrant. The officers relied on the "consent-
3 once-removed" doctrine; i.e. an informant had been granted entry and
4 that consent was passed on to the officers. In discussing the issue
5 of qualified immunity the Court held:

6   "Qualified immunity inquiry turns on objective legal
7 reasonableness of government official's action, assessed in light of
8 legal rules that were clearly established at time it was taken."
9 _Pearson v. Callahan_, _Supra_.

10   In the within action the Defendant, ARTHUR MUNOZ, made a valid
11 vehicle stop based upon the illegal passing of the semi-truck by the
12 Plaintiff, JOSEPH BOCHNER, and Plaintiff's driving at an excessive
13 speed for the conditions. Thereafter, Officer Munoz determined that
14 he was suspicious of the Plaintiff, JOSEPH BOCHNER, driving under the
15 influence of alcohol and asked him to participate in a field sobriety
16 test. Plaintiff refused, thus establishing consciousness of guilt
17 and patent probable cause for the arrest.

18   The temporary detention of a motorist upon probable cause to
19 believe that he has violated the traffic laws does not violate the
20 Fourth Amendment's prohibition against unreasonable seizures, even if
21 a reasonable officer would not have stopped the motorist absent some
22 additional law enforcement objective." _Whren v. United States_ (1996)
23 517 U.S. 806, 116 S.Ct. 1769, 1771.

24   All of the actions of the Defendant, ARTHUR MUNOZ, were
25 justified and did not violate the constitutional rights of the
26 Plaintiff, JOSEPH BOCHNER, in pro per.

27   "If an officer has probable cause to believe that an individual
28 has committed even a very minor criminal offense in his presence, he

may, *without violating the Fourth Amendment*, arrest the offender." People v. McKay (2002) 27 Cal.4[th] 601, 607, 41 P.3d 59, 117 Cal.Rptr.2d 236.

This is such a case where the facts clearly establish that there was no violation of the Plaintiff's constitutional rights.

## IV
## PLAINTIFF'S REFUSAL TO PARTICIPATE IN THE FIELD SOBRIETY TEST EXHIBITED CONSCIOUSNESS OF GUILT AND ESTABLISHED PROBABLE CAUSE

Count I of Plaintiff's Complaint is for False Arrest. The facts establish that the Plaintiff, JOSEPH BOCHNER, created the situation that resulted in his arrest. First he was driving too fast for the conditions; he passed a partially stopped semi-truck by driving on the right shoulder of the roadway; and he refused to participate in a field sobriety test. In California there is an implied consent that if an individual has a driver's license they have consented to chemical testing as set forth in Vehicle Code, Section 23612(a)(1)(A).[3]

> "(a)(1)(A) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) applies." California Vehicle Code, Section 23612(a)(1)(A).

In the within action Plaintiff, JOSEPH BOCHNER, in pro per, requested the blood test. However, in order to administer same it was necessary to arrest him. Defendant, ARTHUR MUNOZ, in acting

---

[3] Pursuant to Local Court Rule 5-133(i), attached hereto is a copy of Vehicle Code, Section 23612

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  reasonably requested that the Plaintiff participate in a field
2  sobriety test, which may negate the necessity of the blood test.
3  Plaintiff refused to participate. It has been held that refusal to
4  participate in the field sobriety testing is evidence of
5  consciousness of guilt. <u>Marvin v. Department of Motor Vehicles</u>, 161
6  Cal.App.3d 717, 719, 207 Cal.Rptr. 793.

7  In the <u>Marvin</u> case a woman was driving her vehicle in circles
8  around a shopping center parking lot at 2:40 a.m. When she stopped
9  an officer approached to ask why she was driving so erratically.
10  When speaking with the driver the officer noted a strong odor of
11  alcohol and observed bloodshot eyes. He asked her to exit the
12  vehicle in order to administer the field sobriety test. She refused.
13  It was held:

14  "In the case before us the officer had observed plaintiff
15  Marvin's erratic driving, he then detected a strong odor of
     alcohol about her breath and person. And when, added to
16  that evidence, was her refusal to submit to a field
     sobriety test, reasonably interpreted as a consciousness of
17  guilt, there was patently probable cause for her arrest."
18  <u>Marvin v. Department of Motor Vehicles</u>, <u>Id.</u> at 720.

19  In the within action Plaintiff, JOSEPH BOCHNER, was driving too
20  fast for the conditions; he passed an almost stopped semi-truck by
21  driving on the right shoulder; and he refused to participate in the
22  field sobriety test, thus exhibiting consciousness of guilt and
23  establishing probable cause for his arrest for allegedly violating
24  Vehicle Code, Section 23152. (Footnote 2)

25  The <u>Marvin</u> case further states: "It becomes unnecessary to
26  determine whether probable cause for plaintiff's arrest existed
27  *before* her refusal to take the sobriety test." <u>Id.</u> at page 720.
28  ///

## THERE WAS NO UNLAWFUL SEARCH AND SEIZURE

The Complaint does not set forth any cause of action for unlawful search and seizure or excessive force. However, it does state that the Defendants "violated plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States."(Complaint: Page 3, Paragraph 10, lines 7-8.) As set forth above, Plaintiff, JOSEPH BOCHNER, refused to participate in the field sobriety testing at the request of the Officer and he was arrested. Plaintiff requested the blood draw. The issue of whether taking the blood violated Plaintiff's constitutional rights is discussed in the case of Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, (1966). There blood was taken against his objection and by force from Plaintiff, Armando Schmerber.

> "He contended that in that circumstance the withdrawal of the blood and the admission of the analysis in evidence denied him due process of law under the Fourteenth Amendment, as well as specific guarantees of the Bill of Rights secured against the States by that Amendment: his privilege against self-incrimination under the Fifth Amendment; his right to counsel under the Sixth Amendment; and his right not to be subjected to unreasonable searches and seizures in violation of the Fourth Amendment." Schmerber v. State of California, Id. at 758, 1829.

The Court held that there was no violation of the Plaintiff's Constitutional rights. Such is the same in the within action where Plaintiff, JOSEPH BOCHNER, in pro per, refused to participate in the Field Sobriety testing and then requested the blood draw. Officer Munoz was required to arrest him and take him to the hospital to conduct the testing, which he did.

///

///

## VI
### DEFENDANT, ARTHUR MUNOZ, HAS THE RIGHT TO
### QUALIFIED IMMUNITY AS HE ACTED REASONABLY

Under the qualified immunity doctrine, government officials can be held liable for civil damages only when their conduct violates "clearly established" constitutional rights "of which a reasonable person would have known." Harlow v. Fitzgerald (1982) 457 U.S. 800, 818. The central purpose of immunity is to protect officers from "undue interference with their duties and potentially disabling threats of liability." Elder v. Holloway (1994) 520 U.S. 510, 515. Accordingly, when properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant (1991) 502 U.S. 224, 229.

> "Qualified immunity is overcome only when the contours of the rights alleged to have been violated was sufficiently clear that a reasonable official would know that what he or she is doing violates that right. Osolinski v. Kane (9th Cir. 1996) 92 F.3d 934, 936. This analysis requires a two part inquiry: (1) was the law governing the state official's conduct clearly established? And (2) under that law could a reasonable official believe his conduct was unlawful?" Jeffers v. Gomez (9th Cir. 2001) 267 F.3d 895, 910 (quoting, Browning v. Vernon (9th Cir. 1995) 44 F.3d 818, 822.)

Plaintiff, JOSEPH BOCHNER, in pro per, claims that he was falsely arrested because the Defendant, ARTHUR MUNOZ, was participating in a public "arrest contest". As set forth in the Declaration of Chief Adam McGill, no such contest existed as a policy of the Defendant, TOWN OF TRUCKEE, at the time of the subject incident on December 22, 2009, or ever. Officers have the right to qualified immunity for mistakes as to the legality of their actions. Here the Officer's actions were legal and reasonable. For purposes of determining if a government official is entitled to qualified

-10-

1   immunity from a civil rights action: "If the law did not put the
2   official on notice that his conduct would be clearly unlawful,
3   summary judgment based on qualified immunity is appropriate."
4   Saucier v. Katz, (2001) 533 U.S. 194, 202, 121 S.Ct. 2151, 2156.

5       "A police officer is entitled to qualified immunity if a
6   reasonable officer possessing the same facts as the defendant officer
7   could have reasonably believed that the search or arrest was
8   supported by probable cause even if a court later determines it was
9   not." Crowe v. County of San Diego (C.D.Cal.2005) 359 F.Supp.2d 994,
10  1013-14.

11      Although the law guarantees certain civil rights to individuals,
12  the compelling factor for immunity is the officer's good faith
13  conduct. Under these facts, there is no reason to suspect that a
14  reasonable official would have believed that his conduct was
15  unlawful. To the contrary, Defendant, ARTHUR MUNOZ, followed the
16  proper protocol. Everything that was accomplished was "by the book"
17  in terms of the vehicular stop and arrest of the Plaintiff, JOSEPH
18  BOCHNER, in pro per. Plaintiff cannot point to one fact that
19  suggests that Defendant, ARTHUR MUNOZ, "knew of" a constitutional
20  right that was being violated, or even potentially violated. Officer
21  Munoz should be deemed immune under the qualified immunity doctrine.

22          "The doctrine of qualified immunity protects
23      government officials 'from liability for civil damages
        insofar as their conduct does not violate clearly
24      established statutory or constitutional rights of which a
        reasonable person would have known.' Harlow v. Fitzgerald,
25      457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
        Qualified immunity balances two important interests - the
26      need to hold public officials accountable when they
        exercise power irresponsibly and the need to shield
27      officials from harassment, distraction, and liability when
28      they perform their duties reasonably. The protection of

-11-

qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, Supra.

## VII
### THERE ARE NO FACTS UPON WHICH TO SUPPORT
### THE CLAIM FOR PUNITIVE DAMAGES

Plaintiff, JOSEPH BOCHNER, in pro per, also claims that the acts of the Defendant, ARTHUR MUNOZ, were willful, malicious, oppressive and/or reckless (Complaint: Paragraph 12) and that the conduct of the Defendant, TOWN OF TRUCKEE, was "willful, malicious, oppressive and/or reckless." (Complaint: Paragraph 16) Plaintiff claims that the acts and conduct which allegedly violated Plaintiff's constitutional rights entitle him to an award of punitive damages in addition to compensatory damages.

Punitive damages may not be awarded against municipalities in actions brought pursuant to 42 U.S.C. Section 1983. City of Newport Beach v. Fact Concerts, Inc. (1981) 453 U.S. 247.

Punitive damages may be awarded against an individual defendant when conduct is shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others. Smith v. Wade (1983) 461 U.S. 30. The conduct must amount to something more than mere recklessness.

"As he tries to find his way in this thicket, the police officer must not be held to act at his peril." Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics (1972) 456 F.2d 1339, 1348.

> "Law enforcement officers whose judgments in making these difficult determinations [whether particular searches or seizures comport with the Fourth Amendment] are objectively legally reasonable should no more be held personally liable in damages than should officials making analogous determinations in other areas of law." Anderson

v. Creighton (1983) 483 U.S. 635, 644, 107 S.Ct. 3034, 3041.

Taken in the light most favorable to the Plaintiff, JOSEPH BOCHNER, the facts represented are that the Defendant, ARTHUR MUNOZ, asked him to participate in a Field Sobriety Test because he was participating in a contest to make the most DUI arrests. Defendant, TOWN OF TRUCKEE, denies that such a contest existed. However, even if the contest did exist, it does not demonstrate "willful, malicious, oppressive and/or reckless" conduct on the part of the Defendant, ARTHUR MUNOZ. In order to support the claim that the Defendant, ARTHUR MUNOZ, acted intentionally and with malice the Plaintiff, JOSEPH BOCHNER, must show by "clear and convincing evidence" that the Defendant engaged in the conduct with malice, oppression or fraud.

> "'Malice' means that the Defendant Officer acted with intent to cause injury or that the Defendant Officer's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

> 'Oppression' means that the Defendant Officer's conduct was despicable and subjected the Plaintiff to cruel and unjust hardship in knowing disregard of his rights.

> 'Despicable conduct' is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

> 'Fraud' means that the Defendant Officer intentionally misrepresented or concealed a material fact and did so intending to harm the Plaintiff." CACI 3941 Punitive Damages-Individual Defendant-Bifurcated Trial (First Phase)..[4]

---

[4] Pursuant to Local Court Rule 5-133(i), attached hereto is a copy of CACI No. 3941.

There is no evidence to suggest that the Defendant, ARTHUR MUNOZ, committed any act necessary for the Plaintiff, JOSEPH BOCHNER, to show · with "clear and convincing evidence" that he acted intentionally and/or with malice toward the Plaintiff. Without the necessary facts that support the finding of malice and intent the Plaintiff's claim for punitive damages must fail.

## VIII
## THERE IS NO EVIDENCE REGARDING
## "FAILURE TO TRAIN"

There is no specific Cause of Action set forth in the Complaint with regard to any claims of "failure to train" or "ratification" of the Officer's actions. However, in the Introduction (Complaint: Paragraph 3) Plaintiff, JOSEPH BOCHNER, states that the Defendant, TOWN OF TRUCKEE, failed to "properly train and supervise the individual defendant Munoz." The Complaint also states under "Facts" that in the year 2009 the Defendant, ARTHUR MUNOZ, "participated in a contest to see whether he could arrest more people on alleged DUI charges than his fellow officers." This was done with the "knowledge and encouragement" of the Defendant, TOWN OF TRUCKEE. (Complaint: Paragraph 6) In an effort to be thorough, Defendants address the issues of "failure to train" and "ratification" of the Defendant Officer's actions briefly.

In order to find a municipality liable there must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. <u>City of Canton v. Harris</u> (1989) 489 U.S. 378, 386. The inadequacy of police training may serve as the basis for a 42 U.S.C. Section 1983 liability only where the failure to train amounts to a deliberate indifference to the rights of individuals with whom the police come into contact. "Only where the

1  municipality's failure to train its employees in a relevant respect

2  evidences a 'deliberate indifference' to the rights of its

3  inhabitants can such a shortcoming be properly thought of as a city

4  'policy or custom' that is actionable under Section 1983." City of

5  Canton v. Harris, Id. at 390.

6  With regard to the vague reference to the Town of Truckee's

7  "knowledge and encouragement" (Complaint: Paragraph 6, Page 2, Line

8  11) of Defendant, ARTHUR MUNOZ, in participating in a contest, there

9  was no contest of the Defendant, TOWN OF TRUCKEE, as set forth in the

10  Declaration of Chief Adam McGill. Therefore there could be no

11  knowledge and encouragement of participating in such a contest.

12  In order to meet the burden of proof the Plaintiff, JOSEPH

13  BOCHNER, must prove "that an official with final policy-making

14  authority ratified a subordinate's unconstitutional decision or

15  action and the basis for it." City of St. Louis v. Praprotnik (1988)

16  485 U.S. 112, 127, 108 S.Ct. 915. There is no such evidence of any

17  kind in the within action and, therefore, ratification is not an

18  issue.

19
## IX
### DEFENDANT, TOWN OF TRUCKEE, IS NOT LIABLE
### PURSUANT TO MONELL

21  The claim of the Plaintiff, JOSEPH BOCHNER, that the Defendant,

22  TOWN OF TRUCKEE, is liable for violation of his constitutional rights

23  must fail as a matter of law because Plaintiff has not and cannot

24  establish facts that meet the criteria for municipal liability set

25  forth in Monell v. Department of Social Services of the City of New

26  York, 436 U.S. 658, 98 S.Ct. 2018 (1978).

28  "We conclude, therefore, that a local government may
not be sued under Section 1983 for an injury inflicted

-15-

solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." Monell v. Department of Social Services of the City of New York, Id., at 694.

The Complaint filed by the Plaintiff, JOSEPH BOCHNER, in pro per, claims that the action is brought against the Defendant, TOWN OF TRUCKEE, for "its failure to properly train and supervise the individual defendant Munoz, and for its improper policies, procedures, practices, and customs regarding lawful arrests." (Paragraph 3) Allegedly the improper policy, procedure, practice and/or custom was a contest to see who could arrest the most people on alleged DUI charges. (Complaint Paragraphs 6 and 14.) As set forth in the Declaration of Chief Adam McGill, no such contest existed on December 22, 2009, or ever as to the Defendant, TOWN OF TRUCKEE.

> "*Connick* began with the fundamental principle that municipalities or local governments cannot be vicariously liable under Section 1983, but instead are 'responsible only for 'their *own* illegal acts.'' (Citations omitted.) A Section 1983 plaintiff must therefore prove that an 'official municipal policy' caused a plaintiff's injury." Wereb v. Maui County, 830 F.Supp.2d 1026, 1031 (2011)

Defendant, TOWN OF TRUCKEE, cannot be held liable for any injury inflicted by its employees unless the employee was following policy and the policy itself created an unconstitutional injury. There was and is no policy, custom or practice of the Police Department of the TOWN OF TRUCKEE regarding violation of any individual's constitutional rights. Therefore, Plaintiff's claim against the Defendant, TOWN OF TURCKEE, must fail.

///

"the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000)." Pauls v. Green, 816 F.Supp.2d 961, 969 (2011).

Plaintiff, JOSEPH BOCHNER, may argue the necessity of obtaining additional discovery in order to dispute the factual and legal representations set forth in the moving papers and supporting Declarations and Exhibits. The Complaint was filed on December 22, 2011. Defendants, ARTHUR MUNOZ and TOWN OF TRUCKEE, contend that Plaintiff has had more than sufficient time to conduct the necessary discovery. Additionally, should Plaintiff be allowed to conduct further discovery prior to the hearing on the Motion for Summary Judgment no additional information would be provided as the in car video (Exhibit "A") and the transcript of the events of December 22, 2009, (Exhibit "B") accurately depict what occurred and what was said by both the Plaintiff, JOSEPH BOCHNER, and by Defendant, ARTHUR MUNOZ.

Further, there was and is no policy, practice or custom of the Defendant, TOWN OF TRUCKEE, designed to violate the constitutional

///

///

///

1  rights of the Plaintiff.  It is respectfully requested that the Court

2  grant the Motion for Summary Judgment in its entirety and dismiss the

3  Complaint with prejudice.

4  Dated:  January 25, 2013          **TONON & ASSOCIATES**

5

6                                    By: _____

7                                        GAYLE K. TONON, ESQ.
                                         Attorney for Defendants,

8                                        ARTHUR MUNOZ and TOWN OF
                                         TRUCKEE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  (TRK1201)P01213.MSJ

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# CALIFORNIA VEHICLE CODE, SECTION 21650

Upon all highways, a **vehicle** shall be driven upon the right half of the roadway, except as follows:

(a) When overtaking and passing another **vehicle** proceeding in the same direction under the rules governing that movement.

(b) When placing a **vehicle** in a lawful position for, and when the **vehicle** is lawfully making, a left turn.

(c) When the right half of a roadway is closed to traffic under construction or repair.

(d) Upon a roadway restricted to one-way traffic.

(e) When the roadway is not of sufficient width.

(f) When the vehicle is necessarily traveling so slowly as to impede the normal movement of traffic, that portion of the highway adjacent to the right edge of the roadway may be utilized temporarily when in a condition permitting safe operation.

(g) This section does not prohibit the operation of bicycles on any shoulder of a highway, on any sidewalk, on any bicycle path within a highway, or along any crosswalk or bicycle path crossing, where the operation is not otherwise prohibited by this **code** or local ordinance.

# CALIFORNIA VEHICLE CODE, SECTION 23152

(a) It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle.

(b) It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

For purposes of this article and Section 34501.16, percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.

In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving.

(c) It is unlawful for any person who is addicted to the use of any drug to drive a vehicle. This subdivision shall not apply to a person who is participating in a narcotic treatment program approved pursuant to Article 3 (commencing with Section 11875) of Chapter 1 of Part 3 of Division 10.5 of the Health and Safety Code.

(d) It is unlawful for any person who has 0.04 percent or more, by weight, of alcohol in his or her blood to drive a commercial motor vehicle, as defined in Section 15210.

In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.04 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.04 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving.

(e) This section shall remain in effect only until January 1, 2014, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2014, deletes or extends that date.

FOOTNOTE 2

CALIFORNIA VEHICLE CODE, SECTION 23612

(a)(1)(A) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) applies.

(B) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood for the purpose of determining the drug content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood test is unavailable, the person shall be deemed to have given his or her consent to chemical testing of his or her urine and shall submit to a urine test.

(C) The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153.

(D) The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (ii) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within 10 years of a separate violation of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code that resulted in a conviction, or if the person's privilege to operate a motor vehicle has been suspended or revoked pursuant to Section 13353, 13353.1, or 13353.2 for an offense that occurred on a separate occasion, or (iii) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the refusal occurs within 10 years of two or more separate violations of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code, or any combination thereof, that resulted in convictions, or if the person's privilege to operate a motor vehicle has been suspended or revoked two or more times pursuant to Section 13353, 13353.1, or 13353.2 for offenses that occurred on separate occasions, or if there is any combination of those convictions or administrative suspensions or revocations.

FOOTNOTE 3

(2)(A) If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood or breath and the officer shall advise the person that he or she has that choice. If the person arrested either is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) applies.

(B) If the person is lawfully arrested for driving under the influence of any drug or the combined influence of an alcoholic beverage and any drug, the person has the choice of whether the test shall be of his or her blood or breath, and the officer shall advise the person that he or she has that choice.

(C) A person who chooses to submit to a breath test may also be requested to submit to a blood test if the officer has reasonable cause to believe that the person was driving under the influence of a drug or the combined influence of an alcoholic beverage and a drug and if the officer has a clear indication that a blood test will reveal evidence of the person being under the influence. The officer shall state in his or her report the facts upon which that belief and that clear indication are based. The officer shall advise the person that he or she is required to submit to an additional test. The person shall submit to and complete a blood test. If the person arrested is incapable of completing the blood test, the person shall submit to and complete a urine test.

(3) If the person is lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153, and, because of the need for medical treatment, the person is first transported to a medical facility where it is not feasible to administer a particular test of, or to obtain a particular sample of, the person's blood or breath, the person has the choice of those tests, including a urine test, that are available at the facility to which that person has been transported. In that case, the officer shall advise the person of those tests that are available at the medical facility and that the person's choice is limited to those tests that are available.

(4) The officer shall also advise the person that he or she does not have the right to have an attorney present before stating whether he or she will submit to a test or tests, before deciding which test or tests to take, or during administration of the test or tests chosen, and that, in the event of refusal to submit to a test or tests, the refusal may be used against him or her in a court of law.

(5) A person who is unconscious or otherwise in a condition rendering him or her incapable of refusal is deemed not to have withdrawn his or her consent and a test or tests may be administered whether or not the person is told that his or her failure to submit to, or the noncompletion of, the test or tests will result in the suspension or revocation of his or her privilege to operate a motor vehicle. A person who is dead is deemed not to have withdrawn his or her consent and a test or tests may be administered at the direction of a peace officer.

(b) A person who is afflicted with hemophilia is exempt from the blood test required by this section, but shall submit to, and complete, a urine test.

(c) A person who is afflicted with a heart condition and is using an anticoagulant under the direction of a licensed physician and surgeon is exempt from the blood test required by this section, but shall submit to, and

complete, a urine test.

(d)(1) A person lawfully arrested for an offense allegedly committed while the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153 may request the arresting officer to have a chemical test made of the arrested person's blood or breath for the purpose of determining the alcoholic content of that person's blood, and, if so requested, the arresting officer shall have the test performed.

(2) If a blood or breath test is not available under subparagraph (A) of paragraph (1) of subdivision (a), or under subparagraph (A) of paragraph (2) of subdivision (a), or under paragraph (1) of this subdivision, the person shall submit to the remaining test in order to determine the percent, by weight, of alcohol in the person's blood. If both the blood and breath tests are unavailable, the person shall be deemed to have given his or her consent to chemical testing of his or her urine and shall submit to a urine test.

(e) If the person, who has been arrested for a violation of Section 23140, 23152, or 23153, refuses or fails to complete a chemical test or tests, or requests that a blood or urine test be taken, the peace officer, acting on behalf of the department, shall serve the notice of the order of suspension or revocation of the person's privilege to operate a motor vehicle personally on the arrested person. The notice shall be on a form provided by the department.

(f) If the peace officer serves the notice of the order of suspension or revocation of the person's privilege to operate a motor vehicle, the peace officer shall take possession of all driver's licenses issued by this state that are held by the person. The temporary driver's license shall be an endorsement on the notice of the order of suspension and shall be valid for 30 days from the date of arrest.

(g)(1) The peace officer shall immediately forward a copy of the completed notice of suspension or revocation form and any driver's license taken into possession under subdivision (f), with the report required by Section 13380, to the department. If the person submitted to a blood or urine test, the peace officer shall forward the results immediately to the appropriate forensic laboratory. The forensic laboratory shall forward the results of the chemical tests to the department within 15 calendar days of the date of the arrest.

(2)(A) Notwithstanding any other law, a document containing data prepared and maintained in the governmental forensic laboratory computerized database system that is electronically transmitted or retrieved through public or private computer networks to or by the department is the best available evidence of the chemical test results in all administrative proceedings conducted by the department. In addition, any other official record that is maintained in the governmental forensic laboratory, relates to a chemical test analysis prepared and maintained in the governmental forensic laboratory computerized database system, and is electronically transmitted and retrieved through a public or private computer network to or by the department is admissible as evidence in the department's administrative proceedings. In order to be admissible as evidence in administrative proceedings, a document described in this subparagraph shall bear a certification by the employee of the department who retrieved the document certifying that the information was received or retrieved directly from the computerized database system of a governmental forensic laboratory and that the document accurately reflects the data received or retrieved.

(B) Notwithstanding any other law, the failure of an employee of the department to certify under subparagraph (A) is not a public offense.

(h) A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of Section 23140, 23152, or 23153 is a field sobriety test and may be used by an officer as a further investigative tool.

(i) If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that person is under the influence of alcohol or drugs, or a combination of alcohol and drugs. The person's obligation to submit to a blood, breath, or urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test.

No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

# CACI No. 3941. PUNITIVE DAMAGES—INDIVIDUAL DEFENDANT—BIFURCATED TRIAL (FIRST PHASE)

Print date: 12/2005

If you decide that [name of defendant]'s conduct caused [name of plaintiff] harm, you must decide whether that conduct justifies an award of punitive damages. At this time, you must decide whether [name of plaintiff] has proved by clear and convincing evidence that [name of defendant] engaged in that conduct with malice, oppression, or fraud. The amount of punitive damages, if any, will be decided later.

"Malice" means that [name of defendant] acted with intent to cause injury or that [name of defendant]'s conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that [name of defendant]'s conduct was despicable and subjected [name of plaintiff] to cruel and unjust hardship in knowing disregard of [his/her] rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that [name of defendant] intentionally misrepresented or concealed a material fact and did so intending to harm [name of plaintiff].

FOOTNOTE 4

Judicial Council of California Jury Instructions

| | |
|---|---|
| TONON & ASSOCIATES (530) 587-0333<br>P. O. BOX 2536<br>TRUCKEE, CA 96160<br>Defendants: Arthur Munoz, Town of Truckee | |
| United States District Court-Eastern District of California<br>501 I Street, #4-200<br>Sacramento, California 95814 | |
| Plaintiff: Joseph Bochner | |
| Defendant(s): Arthur Munoz; Town of Truckee | CASE NO: 2:11-cv-03416-LKK-CKD |

### CERTIFICATE OF SERVICE [FRCP § 5(b)]

I, Kelly Larson, declare as follows:

1. I am over the age of 18 years;
2. I am not a party to this action;
3. My business address is P. O. Box 2536, Truckee, CA 96160;
4. On January _25_, 2013, from my business address, I served a document described as:
   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
5. Service Address(es): **SEE ATTACHED MAILING LIST**
6. Facsimile Transmission Number(s): **SEE ATTACHED MAILING LIST**
7. Overnight Mail Service: Service was accomplished:

☐ By personal service to:

✓ **(By Mail)** I caused the described document to be deposited in a post office, mail box, sub-post office, substation or mail chute, or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage prepaid, and addressed to the Service Address(es).

☐ **(By Express Mail)** I caused the described document to be deposited in a post office, mailbox, sub-post office, substation or mail chute or other like facility regularly maintained by the United States Postal Service for receipt of Express Mail, in a sealed envelope, with Express Mail postage paid and addressed to the Service Address(es).

☐ **(By Overnight Mail)** I caused the described document to be deposited in a box or other facility regularly maintained by the Overnight Mail Service, or delivered to a courier or driver authorized by the Overnight Mail Service to receive documents, in an envelope designated by the Overnight Mail Service, with delivery fees paid or provided for, addressed to the Service Address(es).

☐ **(By Facsimile Transmission)** The parties have agreed to service by facsimile transmission and said agreement has been confirmed in writing. I caused the described document to be transmitted from a facsimile transmission machine which number is (530)587-1545 to the Service Address(es) at the Facsimile Transmission Number(s). The transmission was reported as complete without error by transmission report issued by the facsimile transmission machine upon which the transmission was made.

☐ **(By e-filing)** The individuals/parties listed on the following service list are registered with the Court to receive notice of electronically filed documents. Per ECF rules, hard copies must be served only on parties who are not set up for electronic notification.

I declare the foregoing is true and correct under penalty of perjury under the laws of the State of California.

Date: January _25_, 2013

_Kelly Larson_
Kelly Larson

Case Name: <u>Bochner v. Munoz, et al.</u>
Case No. : 2:11-cv-03416-LKK-CKD

Joseph Bochner, in Pro Per
11448 Deerfield Drive, 2-222
Truckee, California 96161